# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AG LA MESA LLC dba Country Villa La Mesa HealthCare Center, a limited liability company,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>LEXINGTON INSURANCE COMPANY, and DOES 1 through 10, inclusive,<br><br>　　　　　　　　　　　　Defendants. | CASE NO. 10cv1873 - IEG (BGS)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION TO COMPEL BINDING ARBITRATION; and**<br><br>**(2) STAYING THE LITIGATION**<br><br>[Doc. No. 8] |

　　This diversity action stems from Defendant Lexington Insurance Company's denial of Plaintiff AG La Mesa's insurance claim. Presently before the Court is a Motion to Compel Binding Arbitration and to Dismiss or, in the Alternative, Stay the Litigation brought by Defendant. In consideration of the parties' briefs, oral argument, and for the reasons discussed herein, the Court **GRANTS** Defendant's motion and stays the litigation.

## BACKGROUND

　　Defendant issued an employment practices liability insurance policy to Plaintiff with a period of October 1, 2009 to October 1, 2010. (See Def.'s Mot. at 3; Pl.'s Opp. at 2.) The Policy contains an arbitration clause that requires arbitration of "a disagreement as to the interpretation of this policy." (Def.'s Mot. at 3; Pl.'s Opp. at 8.)

On January 25, 2010, a former employee of Plaintiff, Linda Maire, sued Plaintiff for various employment-related violations and practices on behalf of herself and other putative class members. (Def.'s Mot. at 4; Pl.'s Opp. at 2.) Three days later, on January 28, 2010, Plainitff's broker notified Defendant of the *Maire* lawsuit and asked it to provide a defense. Defendant denied the claim on February 3, 2010. (Def.'s Mot. at 5; Pl.'s Opp. at 2.) Plaintiff asked Defendant to reconsider its denial twice, and in both instances, Defendant affirmed its denial of coverage. (Def.'s Mot. at 5; Pl.'s Opp. at 3.) In both instances, Defendant affirmed its denial without mentioning arbitration and instructed Plaintiff to contact the California Department of Insurance ("DOI") if it disagreed with the denial. (See Def.'s Mot. at 5; Pl.'s Opp. at 3.)

On August 3, 2010, Plaintiff filed a complaint in Superior Court against Defendant for breach of the implied covenant of good faith and fair dealing and breach of contract. (See Doc. No. 1.) Defendant removed the case to this Court on September 8, 2010. (Id.) Prior to removal, on August 26, 2010, Defendant invoked the policy's arbitration clause and demanded that Plaintiff agree to arbitrate in Massachusetts. (See Def.'s Mot. at 6; Pl.'s Opp. at 3.) Plaintiff denied Defendant's demand on September 2, 2010. (Def.'s Mot. at 6; Pl.'s Opp. at 3.) After Plaintiff rejected arbitration in Massachusetts, Defendant demanded arbitration in California pursuant to a letter dated September 21, 2010. (Def.'s Mot. at 6; Pl.'s Opp. at 3.) Plaintiff denied Defendant's second demand on September 27, 2010. (Def.'s Mot. at 6.)

Defendant filed the present motion on October 14, 2010. (Doc. No. 8.) Plaintiff filed an opposition and Defendant filed a reply. (Doc. Nos. 10, 11.)

## DISCUSSION

### I.   Scope of the Insurance Policy's Arbitration Clause

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . ." Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). At the same time, arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). In this

case, the *Maire* lawsuit has generated a dispute over coverage, and the parties disagree as to whether the arbitration clause in the Policy requires the parties to resolve the dispute through binding arbitration. For purposes of the present motion, the question is whether a coverage dispute constitutes a "disagreement as to the interpretation of this policy."[1]

Defendant maintains that "all of Plaintiff's claims derive from the interpretation and application of the policy provisions, including amendments, endorsements, and exclusions thereto. Specifically, the parties' coverage positions differ with respect to the application of the Insuring Agreement, Endorsement #012, 'Revised Workplace Torts,' and Exclusion H, Wage claims." Def.'s Reply at 7. Defendant argues further that "resolution of the disagreement over interpretation of the policy would involve an analysis of the *Maire* lawsuit pursuant to the terms of the policy in its entirety." Id.

Plaintiff responds that the arbitration clause is narrow and does not encompass any and all disputes arising out of the policy. Pl.'s Opp. at 8-9. According to Plaintiff, policy interpretation consists only in ascertaining the meaning of the parties' expression, and that under California law, an arbitrator tasked with ascertaining the meaning of the parties' expression would only look to the four corners of the policy (unless extrinsic evidence were necessary to explain an ambiguity). Id. at 9. It follows, Plaintiff argues, that an arbitrator would not be permitted to analyze the *Maire* complaint to see if it was covered by the policy. Id. Plaintiff relies principally on Certain Underwriters at Lloyd's of London v. Celebrity, Inc., 950 S.W.2d 375 (Tex. Ct. App. 1996) for the proposition that policy

---

[1] In its complaint, Plaintiff has asserted two causes of action: breach of the implied covenant of good faith (first cause of action) and fair dealing and breach of contract (second cause of action). Defendant correctly notes that Plaintiff's first cause of action is completely dependant on its second cause of action. See Waller v. Truck Ins. Exchange, Inc., 900 P.2d 619, 639 (Cal. 1995) ("if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing"). Nevertheless, because Plaintiff's first cause of action involves obligations that are, by definition, separate from the express obligations of the insurance contract, see AXA Versicherung AG v. New Hampshire Ins. Co., 708 F. Supp.2d 423, 431 (S.D.N.Y. 2010), the Court concludes Plaintiff's first cause of action is not covered by the parties arbitration clause. Part I evaluates the applicability of the arbitration clause to Plaintiff's second cause of action only.

1 interpretation is distinct from weighing the evidence and determining whether particular conduct
2 amounts to a breach.[2]

3     The starting point for evaluating the scope of an arbitration clause is the language of the clause
4 itself, with any doubts resolved in favor of arbitration. <u>Moses H. Cone Memorial Hospital v. Mercury
5 Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983). A controversy falls within a valid arbitration clause "unless
6 it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation
7 that covers the asserted dispute." <u>Marchese v. Shearson Hayden Stone, Inc.</u>, 734 F.2d 414, 419 (9th
8 Cir. 1984) (internal quotation marks omitted).

9     In this case, the question is whether "interpretation" is susceptible of a meaning that
10 encompasses the resolution of a concrete dispute over the scope of coverage. Among other things,
11 "interpret" means "to conceive in the light of individual belief, judgment, or circumstance." <u>See</u>
12 Merriam-Webster's Collegiate Dictionary 654 (11th ed. 2003). To conceive of the parties' dispute in
13 light of individual circumstance may entail resolving the parties' coverage dispute; "interpret" is thus
14 "susceptible of an interpretation covers the asserted dispute." <u>Marchese</u>, 734 F.2d at 419.

15     In insurance contracts, as in all contracts, "interpretation" entails the use of abstract guidelines
16 to resolve concrete disputes. <u>Waller v. Truck Ins. Exchange, Inc.</u>, 900 P.2d 619, 627 (Cal. 1995)
17 (reciting interpretation principles and concluding that "[t]hese well-established precepts of insurance
18 coverage guide us in our determination of whether a particular policy requires a liability insurer to
19 defend a lawsuit . . ."). In the first instance, the decision-maker must compare "the allegations of the
20 complaint with the terms of the policy." <u>Id.</u> While it is conceivable that a disagreement over

---

[2] In <u>Celebrity, Inc.</u>, 950 S.W.2d 375 (Tex. Ct. App. 1996), plaintiff Celebrity obtained insurance coverage from defendant Underwriters on certain types of claims that might be filed by plaintiff's employees. When one of Celebrity's employees filed a claim, Underwriters denied coverage, maintaining that it was for an "occupational illness," a stated exclusion under the policy. In contrast with an "occupational illness," an "occupational injury" would have been covered under the policy. Celebrity filed suit, and Underwriters moved to compel arbitration. The parties' contract contained an arbitration clause that required the parties to "arbitrate conflicts concerning interpretation of the policy as that policy pertains to the performance of the parties' respective obligations thereunder." The trial court denied Underwriters' request for arbitration. Upholding the trial court's decision, the Court of Appeals observed:

> [T]he arbitration clause before us requires arbitration of the interpretation of the policy . . . Here, the underlying dispute is not one of policy interpretation. Instead, it appears to be a factual dispute . . . Accordingly, we conclude that the underlying dispute was not encompassed by the arbitration clause in the [insurance policies].

<u>Id.</u> at 378-79.

interpretation of an insurance policy could arise in the absence of a concrete coverage dispute, it is unlikely the parties intended that the arbitration clause cover such a minor subset of disagreements.[3]

Accordingly, pursuant to its duty to resolve "any doubts concerning the scope of arbitrable issues" in favor of arbitration, the Court concludes the parties' coverage dispute is a disagreement as to the interpretation of the Policy subject to binding arbitration. As a result, the Court must compel binding arbitration and stay the litigation unless, as Plaintiff maintains, Defendant is precluded from demanding arbitration due to forfeiture or estoppel.

**II.     Forfeiture**

Plaintiff argues that Defendant has forfeited its right to arbitration. See Pl.'s Opp. at 4-6. In doing so, Plaintiff relies on a trio of cases in which the California Supreme Court and California Court of Appeals outlined circumstances in which insurers must apprise its insureds of the right to arbitration and circumstances in which an insurer forfeits the right to demand arbitration. Id. According to Defendant, each of those cases is either distinguishable or, in fact, supports its position. See Def.'s Mot. at 2-5.

In Davis v. Blue Cross of Northern California, 25 Cal.3d 418, 421 (Cal. 1979), the California Supreme Court upheld the trial court's finding that Blue Cross could not compel arbitration because its "failure timely or meaningfully to apprise its insureds of their rights to arbitration . . ." The trial court's finding was guided by several factors. The trial court found that the arbitration clause was ambiguously worded and obscurely placed within the policy. Id. at 426. As a consequence, the trial court found that Blue Cross should have known its insureds would not be aware of their right to arbitration and the procedures for initiating it. Id. But, when learning insureds disagreed with claim resolution, Blue Cross failed to inform them of the arbitration procedures. Id. As a result, the trial court found that Blue Cross' failure to inform its insureds of the arbitration clause amounted to an implied misrepresentation that its insureds had no choice but to accept Blue Cross' determination. Id. In addition, the trial court determined that Blue Cross had adopted its course of conduct for the purpose of inducing insureds to give up their rights under the insurance contracts. Id. On the basis

---

[3] In accordance with the foregoing, the Court declines Plaintiff's invitation to follow Celebrity, Inc. There, the Texas Court of Appeals drew a hard line between a policy interpretation dispute and a factual dispute but it did not providing a rationale for doing so.

of these findings, the trial court concluded that Blue Cross had breached the duty of good faith and fair dealing owed to its insureds, and, in doing so, it forfeited its right to demand arbitration. Id. at 427.

Eight years later, in Sarchett v. Blue Shield of California, 43 Cal.3d 1, 15 (Cal. 1987), the California Supreme Court expanded on the principles it outlined in Davis. There, in a plurality opinion, the Court noted that "once it becomes clear to the insurer that its insured disputes its denial of coverage . . . the duty of good faith does not permit the insurer passively to assume that its insured is aware of his rights under the policy. The insurer must instead take steps to make sure that the insured is informed of his remedial rights." Id. at 15. In a footnote immediately following, the Court observed: "In some cases, it will be clear that the insured knows his rights under the policy; for example, the insured's claim may refer to such remedies. When in doubt, however, the insurer should advise the insured of his rights under the policy." Id. at 15 n.15. In contrast with the arbitration provision at issue in Davis, the arbitration provision in Sarchett was adequately set out in the policy with a bold-face heading. Id. at 15. However, Blue Shield had reason to know the insured was uninformed of his rights because he repeatedly protested the denial of coverage without demanding review by an impartial panel of physicians. Id. Blue Shield nonetheless denied the insured's claim several times without mentioning his right to review. Id. Accordingly, the Court held that Blue Shield's "course of conduct appears designed to mislead subscribers into forfeiting their contractual right to impartial review and arbitration of disputed claims." Id.

In Chase v. Blue Cross of California, 42 Cal. App. 4th 1142, 1157 (Cal. Ct. App. 1996), the California Court of Appeal sought to balance the "enhanced duty of the insurer as a contracting party against the strong public policy in favor of arbitration." The Court held that in order to find that an insurer has forfeited its right to arbitration, "we understand Davis and Sarchett to require conduct designed to mislead policyholders" and instructed that the "the court's focus when evaluating an allegation of forfeiture should be on the subjective intent of the insurer." Id. Under Chase, the burden of proof is on the party asserting forfeiture and must be demonstrated by clear and convincing evidence. Id.

To the extent this case is governed by the relatively strict standard articulated in Chase, Plaintiff cannot satisfy its burden of showing by clear and convincing evidence that Defendant exercised bad faith. There is no question Defendant initially demanded arbitration in Massachusetts.

See Def.'s Mot. at 6; Pl.'s Opp. at 3.  However, Defendant's initial demand appears to have been the result of a mistake, not bad faith.  The original version of the parties' arbitration clause provided for arbitration in Massachusetts, and the parties later agreed on a provision for arbitration in California.  Defendant acknowledged its mistake within approximately three weeks.  See Def.'s Mot. at 6; Pl.'s Opp. at 3.  Aside from the initial arbitration demand, the only potential evidence of bad faith is Defendant's failure to advise Plaintiff of the right to arbitration when it denied (and affirmed denial of) coverage.  The foregoing facts do not establish "clear and convincing evidence" of bad faith.  Chase, 42 Cal. App. 4th at 1157.

Defendant's failure to advise Plaintiff of the right to arbitrate is consistent with its position that such an advisement was unnecessary here, where the parties had specifically negotiated the terms of the arbitration clause.[4]  Such negotiations suggest that, under Sarchett, this is an instance in which it is "clear that the insured knows his rights under the policy . . ."  43 Cal.3d at 15 n.15.  And unlike both Sarchett and Davis, which arose in the context of insurer-insured relationships characterized by unequal bargaining power, the parties in this case are both business entities capable of protecting their own interests.  Accordingly, the Court concludes Defendant has not forfeited its right to demand arbitration.

**III.   Estoppel**

The elements of equitable estoppel are:  "(1) the party to be estopped has engaged in blameworthy or inequitable conduct; (2) that conduct caused or induced the other party to suffer some disadvantage; and (3) equitable considerations warrant the conclusion that the first party should not be permitted to exploit the disadvantage he has thus inflicted upon the second party."  City of Hollister v. Monterey Ins. Co., 165 Cal. App. 4th 455, 488 (2008).  Equitable estoppel does not require affirmative conduct or fraudulent intent by the insurer; rather, it is predicated on the insurer's failure to speak when in law or equity it is bound to do so."  Id.; see also Spray, Gould & Bowers v. Associated Int'l Ins. Co., 71 Cal. App. 4th 1260, 1268 (Cal. Ct. App. 1999) ("An estoppel may arise from silence where there is a duty to speak").  Here, Plaintiff contends Defendant engaged in inequitable conduct in repeatedly denying its claim over a period of six months without mentioning

---

[4] Defendant contends, and Plaintiff does not dispute, that in September 2009, Plaintiff's broker requested the arbitration clause be modified in two ways.  See Def.'s Mot. at 4.

1  arbitration, burdening Plaintiff with the cost of litigation and enabling Defendant to use arbitration to
2  its unilateral advantage.  Pl.'s Opp. at 7.

3      Defendant's failure to advise Plaintiff of the right to arbitrate was not blameworthy or
4  inequitable.  As stated above, such an advisement was unnecessary here, where the parties had
5  specifically negotiated the terms of the arbitration clause.  Plaintiff does not contend it lacked actual
6  knowledge of the arbitration clause.  See generally Pl.'s Opp.  Accordingly, Defendant is not estopped
7  from enforcing the arbitration clause.

## CONCLUSION

9      For the foregoing reasons, the Court **GRANTS** Defendant's motion and **ORDERS** as follows:
10  – The parties are to forthwith submit to binding arbitration as to Plaintiff's second cause of
11  action for breach of contract.
12  – Plaintiff's first cause of action for breach of the implied covenant of good faith and fair
13  dealing is not subject to binding arbitration.  Accordingly, the Court stays the litigation pending
14  arbitration.  The parties shall inform the Court by letter the status of the case, on or before 90 days
15  from the date of this order.

16  **IT IS SO ORDERED.**

18  **DATED: January 3, 2011**

19  _____
**IRMA E. GONZALEZ, Chief Judge**
20  **United States District Court**